Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| UNIQUE SECURITY SERVICES, INC.<br><br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DEL CENTRO DE RECAUDACIONES MUNICIPALES<br><br>Recurrida | TA2025RA00346 | *Revisión Administrativa* procedente de la Junta Revisora de la Administración de Servicios Generales<br><br>Caso Núm. JR25143<br><br>Sobre: Subasta Núm. 2024-002-Servicios de Seguridad para el CRIM |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Rodríguez Casillas, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 26 de marzo de 2026.

Comparece ante nos *Unique Security Services, Inc.* ("Unique" o "Recurrente"), para que revoquemos la *Resolución* emitida el 23 de octubre de 2025 por la Junta Revisora de Subastas de la Administración de Subastas ("Junta Revisora de Subastas-ASG"). Allí, la **Junta Revisora de Subastas-ASG** declaró No Ha Lugar la *Solicitud de Revisión* de **Unique** y en consecuencia, confirmó su descalificación de la Subasta Núm. 2024-002, para la Contratación de Servicios de Seguridad en el Edificio Central y Oficinas Regionales del Centro de Recaudaciones de Ingresos Municipales (CRIM).

Por los fundamentos que expresamos a continuación, resolvemos **confirmar** la *Resolución* recurrida.

**-I-**

Antes de adentrarnos en los hechos que atañan la controversia ante esta Curia, es menester resaltar que **Unique** aceptó y dio por cierta la relación de hechos procesales y sustantivos expuesta por la **Junta Revisora de Subastas-ASG** en la resolución

adjudicativa de la cual recurre; por lo tanto, nos ceñimos a los mismos.

Surge del expediente que, el **18 de abril de 2024**, la Junta de Subastas del Centro de Recaudaciones de Ingresos Municipales ("Junta de Subastas del CRIM" o "Recurrida"), publicó el aviso de la Subasta Núm. 2024 002, para la Contratación de Servicios de Seguridad en el Edificio Central y Oficinas Regionales.[1]

Los pliegos con las especificaciones de la subasta se entregaron el **23 de abril de 2024**.[2] En el pliego, la **Junta de Subastas del CRIM** dispuso que los licitadores debían demostrar que contaban con los recursos financieros adecuados para realizar los servicios bajo el contrato. Para ello, solicitó a los licitadores que presentaran documentos que acreditaran la disponibilidad de crédito bancario u otra información que le permitiera evaluar la solvencia financiera existente para cumplir con el contrato.

También, la **Junta de Subastas del CRIM** estableció que no consideraría aquellas ofertas en las que el licitador ofreciera más de un precio por servicio cotizado. Sobre la cotización de los precios, añadió que los precios cotizados por los licitadores deberían mantenerse firme durante la vigencia el contrato. Además, señaló que los precios no estarían sujetos a cambios por aumento en el mercado o de cualquier índole, fuese previsible o no.

En cuanto a la metodología de evaluación, la **Junta de Subastas del CRIM** dispuso que solo evaluaría las ofertas que hubiesen cumplido con todos los requisitos documentales indispensables. Igualmente, la adjudicación se haría a favor del licitador que estuviese respaldado por un buen historial de capacidad y cumplimiento.

---

[1] Véase, *Binder* de la Parte Recurrente, pág. 41.
[2] Véase, *Binder* de la Parte Recurrente, págs. 42-54.

Así las cosas, la **Junta de Subastas del CRIM** fijó el **6 de mayo de 2024** como fecha límite para la entrega de cotizaciones en sobres sellados. Mientras que el *acto de apertura* se calendarizó para el **8 de mayo de 2024**. Por lo cual, fueron recibidas seis (6) propuestas de los siguientes licitadores:

- Sheriff Security Services, Inc.
- **West Security Services, Inc.**
- Ranger American of PR, Inc.
- **Unique Security, Inc.**
- **Bridge Security, Inc.**
- North East Security, Inc.

Finalmente, el **4 de junio de 2024**, la **Junta de Subastas del CRIM** emitió una *Resolución de Adjudicación* y adjudicó la *buena pro* a West Security Services, Inc. ("West Security"),[3] aunque **Unique** fue el postor más bajo. No obstante, **West Security** rechazó la adjudicación y explicó que no contempló en su oferta el impacto económico de la implementación de la Ley Núm. 47-2021, conocida como *Ley de Salario Mínimo de Puerto Rico*.

Ante este cuadro, el **27 de junio de 2024**, la **Junta de Subastas del CRIM** emitió una *Resolución de Adjudicación 2,* en la cual le concedió la buena pro a Bridge Security, Inc. ("Bridge"), aunque **Unique** resultaba ser el postor más bajo.

Luego de varios trámites procesales, incluyendo una *Solicitud de Reconsideración* de **Unique**, el **29 de julio de 2024**, la **Junta de Subastas del CRIM** emitió una *Resolución de Adjudicación 2 (Enmendada)*.[4] Allí, reiteró la adjudicación de la *buena pro* a **Bridge** y fundamentó a qué se debió la descalificación de **Unique**. En esencia, explicó que **Unique** era la compañía que al momento de realizarse la subasta le brindaba servicios se seguridad al **CRIM**. De acuerdo con el Director de Servicios Administrativos, el desempeño de **Unique** fue "*muy por debajo de los esperado y contratado*". Por

---

[3] Véase, *Binder* de la Parte Recurrente, págs. 57-58.
[4] Véase, *Binder* de la Parte Recurrente, págs. 69-72.

ello, los gerentes de las oficinas regionales llamaban y enviaban correos electrónicos *—con frecuencia—* detallando la pobre ejecutoria de **Unique** en la prestación de los servicios de seguridad. Tanto así, que el 15 de mayo de 2024, el Administrador de Facilidades de la Oficina de Servicios Administrativos del **CRIM** remitió un correo electrónico recomendado un cambio en los servicios de seguridad.[5] Es decir, la **Junta de Subastas del CRIM** reconoció que, de las compañías en competencia, la oferta de **Unique** era la más económica y esto la posicionaba como el mejor postor. Sin embargo, el incumplimiento con las expectativas y términos bajo los que fue contratada el año fiscal anterior a la subasta, tuvo el resultado de descalificarle del proceso.

Por lo tanto, en cumplimiento con su deber de salvaguardar los mejores intereses del **CRIM** y el mejor beneficio público, la **Junta de Subastas del CRIM**, adjudicó la subasta a favor de **West Security** (**segundo mejor postor**), pero ante el rechazo de esta, se le adjudicó la subasta a **Bridge** por cumplir con **todas las especificaciones**, aunque resultó ser el **tercer mejor postor**.

En desacuerdo, **Unique** presentó una segunda *Solicitud de Reconsideración de Adjudicación* el **19 de agosto de 2024**.[6] La **Junta de Subastas del CRIM** no actuó sobre esta segunda reconsideración.

Así las cosas, **el 7 de octubre de 2024**, **Unique** acudió ante este foro apelativo intermedio mediante recurso de revisión judicial. No obstante, el **21 de octubre de 2024**, esta Curia emitió una *Sentencia* en la cual desestimamos el recurso por falta de jurisdicción, por prematuro.[7] En apretada síntesis, encontramos que la notificación realizada por la **Junta de Subastas del CRIM** en

---

[5] Véase, *Binder* de la Parte Recurrente, págs. 119-120.
[6] Véase, *Binder* de la Parte Recurrente, págs. 79-93.
[7] Véase, *Binder* de la Parte Recurrente, págs. 103-114.

su *Resolución de Adjudicación 2 (Enmendada),* era defectuosa y contraria al estatuto uniformador que la obliga. De conformidad con la normativa aplicable y en observancia al debido proceso de ley, concluimos que el recurso presentado por **Unique** era prematuro. Por lo que devolvimos el caso ante la **Junta de Subastas del CRIM** para que notificara su determinación conforme a derecho.

Tras varios trámites procesales, la **Junta de Subastas del CRIM** emitió la *Resolución de Adjudicación 3 (Enmendada)* el **20 de agosto de 2025**.[8] En apretada síntesis, reiteró la descalificación de **Unique**.

Inconforme, **el 29 de agosto de 2025**, **Unique** presentó una *Solicitud de Revisión* ante la **Junta Revisora de Subastas-ASG**.[9] En esencia, argumentó que fue la única proponente que cumplió con el requisito de presentar un precio único no condicionado. Además, cuestionó la determinación sobre alegado desempeño insatisfactorio en la ejecución de contrato de seguridad para el año fiscal 2023-2024. Arguyó que tal determinación era una expresión general, conclusoria y carente de fundamentos. Adujo que nunca se le brindó la oportunidad de defenderse ni de refutar las imputaciones en su contra, lo cual, a su entender, constituyó una violación crasa al debido proceso de ley. Finalmente, adujo que **Bridge**, como licitador agraciado, incumplió con varios requisitos esenciales del pliego de subasta por lo que debía ser descalificado.

El **24 de septiembre de 2024**, la **Junta de Subastas del CRIM** presentó su *Alegato en Oposición a Revisión Administrativa*,[10] ante la **Junta Revisora de Subastas-ASG**. En esencia, sostuvo que el expediente reflejaba incumplimientos reiterados y un desempeño insatisfactorio por parte de **Unique**. Argumentó que se satisfizo el

---

[8] Véase, *Binder* de la Parte Recurrente, págs. 13-16.
[9] Véase, Entrada Núm. 1 de SUMAC-TA.
[10] Véase, Entrada Núm. 3 de SUMAC-TA.

debido proceso de ley, ya que **Unique** conocía los señalamientos sobre su desempeño y recibió una notificación adecuada de las razones para la adjudicación. De otro lado, explicó que **Bridge** presentó un precio base y un precio contingente sujeto a posibles camios legislativos en el salario mínimo. Adujo que dicha previsión no desnaturalizó la oferta, pues ello era una condición que solo se activaría en caso de que se implementara una modificación en la ley. Sobre el incumplimiento documental por parte de **Bridge**, explicó que ciertamente, el pliego exigía la presentación de una declaración jurada conforme a la Ley Núm. 2-2018, conocida como *Código Anticorrupción para el Nuevo Puerto Rico*. Sin embargo, entendió que su omisión no era fatal puesto que —a su entender— la mencionada ley solo requería la declaración jurada al momento de la contratación. Finalmente, aclaró que, aunque **Bridge** presentó una carta bancaria dirigida a una entidad distinta al **CRIM**, ello no le descalificaba ya que la licitadora agraciada acreditó la existencia de una línea de crédito verificable.[11]

El **23 de octubre de 2025**, la **Junta Revisora de Subastas-ASG** emitió su *Resolución* en la cual declaró *No Ha Lugar* la *Solicitud de Revisión* de **Unique**.[12] Razonó que contrario a las alegaciones de **Unique**, los demás licitadores no presentaron dos precios distintos por hora de servicio. Concluyó que los licitadores presentaron una tarifa base para el servicio y una tarifa específica diferente en caso

---

[11] Es menester mencionar que la **Junta de Subastas del CRIM** presentó una *Moción Suplementaria para Aclarar y Someter Certificación de Cumplimiento Documental del Licitador Agraciado*. En esencia, reconoció que no incluyó los estados financieros de **Bridge** en el expediente elevado a la **Junta Revisora de Subastas-ASG**, por entender que se trataba de información sensible. De otro lado, la **Junta de Subastas del CRIM** aclaró que **Bridge** sometió la declaración jurada con la propuesta original, pero fue omitida por error y, por ello, la anejaban a su moción.

No obstante, la **Junta Revisora de Subastas-ASG** notó que la **Junta de Subastas del CRIM** nuevamente, omitió la declaración jurada. Ante ese cuadro, la **Junta Revisora** le ordenó a que elevara la declaración jurada, estados financieros y cualquier otro documento omitido del expediente de conformidad con la Ley Núm. 73-2019, conocida como *Ley de la Administración de Servicios Generales para Centralización de las Compras del Gobierno de Puerto Rico de 2019*. Por lo cual, la **Junta de Subastas del CRIM** cumplió con dicha orden.

[12] Véase, Entrada Núm. 2 de SUMAC-TA.

de aprobarse el salario mínimo, dispuesto por la Ley Núm. 47-2021, *supra*. Indicó que, a diferencia de los demás licitadores, **Unique** no presentó una tarifa contemplando el aumento al salario mínimo; lo cual no representaba una tarifa certera e impedía evaluar el impacto económico de la oferta. En cuanto al historial de desempeño de **Unique**, señaló que uno de los criterios de adjudicación en el pliego de subasta era la experiencia previa de los licitadores. Por lo cual, la **Junta Revisora de Subastas-ASG** encontró que la determinación de la **Junta de Subastas del CRIM** no fue producto del capricho ni de una apreciación aislada, sino en el incumplimiento contractual debidamente documentado por el **CRIM**. En el cual, el personal del **CRIM** relató hechos concretos que demostraban los incumplimientos de los oficiales de seguridad con sus responsabilidades. Finalmente, la **Junta de Subastas-ASG** coincidió con la **Junta de Subastas del CRIM** en cuanto a la carta bancaria presentada por **Bridge**. La **Junta Revisora** determinó que en efecto, la carta sí iba dirigida a otra entidad gubernamental. Sin embargo, coligió que ello no era motivo de descalificación ya que lo esencial era que acreditara la existencia de una línea de crédito vigente y suficiente para respaldar la ejecución del contrato.

Inconforme aun, el **12 de noviembre de 2025**, **Unique** acude ante este foro intermedio mediante una *Revisión Administrativa* y señala la comisión de los siguientes errores:

> A. **ERRÓ LA ASG AL NO DETERMINAR QUE UNIQUE FUE EL ÚNICO PROPONENTE QUE CUMPLIÓ CON LA ESPECIFICACIÓN MEDULAR DE SOMETER UN PRECIO ÚNICO NO CONDICIONADO, POR LO QUE PRECEDE DESCALIFICAR A TODOS LOS DEMÁS PROPONENTES Y ADJUDICAR LA SUBASTA A SU FAVOR.**

> B. **ERRÓ LA ASG AL NO DETERMINAR QUE, AÚN SI DE ALGUNA MANERA SE PUEDE VÁLIDAMENTE OBVIAR LA ESPECIFICACIÓN QUE REQUIERE DESCARTAR DE PLANO LAS OFERTAS QUE CONTENGAN MÁS DE UN PRECIO, UNIQUE FUE POR MUCHO EL MEJOR POSTOR.**

**C. ERRÓ LA ASG AL SOSTENER LA DECISIÓN DE LA JUNTA DE DESCALIFICAR A UNIQUE, CUANDO DICHA DESCALIFICACIÓN CARECE DE FUNDAMENTO JURÍDICO SUFICIENTE, SUPONE UNA VIOLACIÓN CRASA DE PRINCIPIOS FUNDAMENTALES DE DEBIDO PROCESO DE LEY, ES CONTRARIA AL INTERÉS PÚBLICO Y, EN ÚLTIMA INSTANCIA, NO SE AJUSTA A LA REALIDAD.**

**D. ERRÓ LA ASG AL NO DETERMINAR QUE BRIDGE DEBE SER DESCALIFICADO PORQUE NO CUMPLIÓ CON LAS ESPECIFICACIONES DE LA SUBASTA.**

El **17 de noviembre de 2025**, la **Junta de Subastas del CRIM** compareció mediante el *Alegato en Oposición*.

Con el beneficio de la comparecencia de ambas partes, estamos en posición de atender la controversia ante nuestra consideración.

**-II-**

**-A-**

Conforme al Artículo 4.006 inciso (c) de la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico*, el Tribunal de Apelaciones tiene competencia apelativa para revisar las decisiones, órdenes y resoluciones finales emitidas por las agencias administrativas.[13] Cónsono con lo anterior, nuestra facultad revisora delimita la discreción de los organismos administrativos a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley.[14] Además, permite a los foros judiciales velar que los entes administrativos den cumplimiento a los mandatos constitucionales, en especial, al debido proceso de ley.[15]

Por su parte, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* ("LPAU") establece el marco de revisión

---

[13] Artículo 4.006 inciso (c) de la Ley Núm. 201-2003, según enmendada, conocida como la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*, 4 LPRA sec. 24y inciso (c).

[14] *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025); *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016).

[15] *Capote Rivera v. Voili Voila Corporation*, 213 DPR 743, 753 (2024).

judicial de estas decisiones.[16] En el ejercicio de tal facultad, este foro apelativo está obligado a ser deferente con las determinaciones de los organismos administrativos en consideración a la experiencia y al conocimiento especializado que estas poseen sobre los asuntos que le fueron delegados.[17] Sin embargo, ello no equivale a una renuncia de la función revisora de los tribunales.[18]

La revisión judicial no implica una nueva valoración de la evidencia ni sustituye la función de la agencia, sino que se limita a garantizar que las agencias actúen dentro de las facultades otorgadas por ley y conforme a derecho.[19] De hecho, el Tribunal Supremo de Puerto Rico ha reiterado que las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.[20]

Así pues, la revisión judicial de una decisión administrativa se circunscribe a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal.[21] El criterio rector es la razonabilidad de la actuación de la agencia recurrida.[22] A esos efectos, la revisión judicial comprende tres (3) aspectos: **(i)** la concesión del remedio apropiado; **(ii)** la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y **(iii)** la revisión completa y absoluta de las conclusiones de derecho.[23] En cuanto a las determinaciones o conclusiones de

---

[16] Sección 4.5 de la Ley Núm. 38-2017, según enmendada, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9675.

[17] Sec. 4.5 de la Ley Núm. 38-2017, según enmendada, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9675; *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Cruz v. Administración,* 164 DPR 341, 357 (2005).

[18] *Vázquez v. Consejo de Titulares, supra,* a la pág. 17.

[19] *Oficina de Ética Gubernamental v. Martinez Giraud,* 210 DPR 79, 88 (2022); *Hernández Feliciano v. Mun. De Quebradillas,* 211 DPR 99 (2023).

[20] *Vázquez v. Consejo de Titulares, supra,* a las págs. 13, 17.

[21] *Vélez v. A.R.Pe.,* 167 DPR 684, 693 (2006).

[22] *Super Asphalt v. AFI y otro, supra; González Segarra et al. v. CFSE,* 188 DPR 252, 276 (2013); *Trigo Margarida v. Junta Directores, supra,* pág. 394.

[23] Sec. 4.5 de la Ley Núm. 38-2017, según enmendada, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* 3 LPRA sec. 9675; *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra,* a la pág. 6.; *Vázquez v. Consejo de Titulares, supra,* a la pág. 13.

derecho, el Alto Foro Judicial de Puerto Rico ha reiterado que el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno.[24]

En fin, este proceso de revisión judicial busca equilibrar la deferencia hacia las agencias administrativas, debido a su especialización, con la necesidad de garantizar que sus decisiones sean legales y razonables.[25]

**-B-**

A tono con lo antes dicho, es menester recordar que el objetivo de exigir que la contratación y las obras que realiza el Gobierno se efectúen mediante el proceso de subastas, es *proteger los intereses y el dinero público*. A través de las subastas se protegen los intereses del pueblo, ya que procuran conseguir *los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento.*[26]

La revisión de subastas se rige por principios similares a los que gobiernan la revisión de los procedimientos celebrados ante las agencias.[27] Como norma general, en el contexto de las subastas gubernamentales, la Junta de Subastas de la agencia goza de amplia discreción en la evaluación de las propuestas sometidas ante su consideración.[28] De ordinario, las agencias se encuentran en mejor posición que los tribunales para evaluar las ofertas ante su consideración.[29] Lo anterior responde a la vasta experiencia y especialización que posee la agencia y que, a su vez, la coloca en mejor posición que el foro judicial para seleccionar al mejor licitador que más convenga al interés público.[30]

---

[24] 3 LPRA sec. 9675; *Vázquez v. Consejo de Titulares, supra.*
[25] *Vázquez v. Consejo de Titulares, supra.*
[26] *Puerto Rico Eco Park, Inc. v. Municipio de Yauco*, 202 DPR 525, 531 (2019).
[27] *Maranello v. OAT*, 186 DPR 780, 793 (2012).
[28] *Caribbean Communications v. Pol. de PR*, 176 DPR 978, 1006 (2009).
[29] *Aut. Carreteras v. CD Builders, Inc.*, 177 DPR 398, 408 (2009).
[30] *Maranello v. OAT, supra*, pág. 792.

Por lo que, los tribunales reconocemos la discreción de las agencias en el ejercicio de sus facultades para considerar licitaciones, rechazar propuestas y adjudicar la subasta a favor de **la oferta que estime se ajusta mejor a las necesidades particulares de la agencia y al interés público en general**.[31] Inclusive, las agencias están facultadas a rechazar las ofertas más bajas siempre que su determinación sea razonable.[32] Así pues, los tribunales no debemos intervenir con el criterio de las agencias, **excepto en aquellos casos donde se demuestre que la decisión se tomó de forma arbitraria o caprichosa, o mediante fraude o mala fe**.[33] Ausentes estos elementos, ningún licitador tiene derecho a quejarse cuando otra oferta es elegida como la más ventajosa.[34] El criterio rector de las revisiones administrativas será la razonabilidad de la actuación de la agencia.[35] Los tribunales no deben alterar las determinaciones de un organismo administrativo si están sostenidas por evidencia sustancial que surja del expediente considerado en su totalidad.[36]

**-C-**

El *Centro de Recaudación de Ingresos Municipales* se creó mediante la derogada Ley Núm. 80 del 30 de agosto de 1991, conocida como la *Ley del Centro de Recaudación de Ingresos Municipales* ("Ley del CRIM").[37] En su Artículo 12, la **Ley del CRIM** le autorizó a establecer el reglamento de compras.[38] Así, en virtud de sus facultades, el **CRIM** promulgó el *Reglamento de Compra del CRIM* ("Reglamento Núm. 8342"), del 22 de abril de 2013.[39] En el

---

[31] *Aut. Carreteras v. CD Builders, Inc., supra. Énfasis nuestro.*
[32] *Caribbean Communications v. Pol. de PR, supra,* pág. 1007.
[33] *Torres Prods. v. Junta Mun. Aguadilla,* 169 DPR 886, 898 (2007). *Énfasis nuestro.*
[34] *Íd.*
[35] *Otero v. Toyota,* 163 DPR 716, 727 (2005).
[36] *Íd.,* págs. 727-728.
[37] 21 LPRA 5802.
[38] 21 LPRA 5811.
[39] Cabe señalar que para estos hechos, es de aplicación el derogado Reglamento Núm. 8342.

Artículo 6 del **Reglamento Núm. 8342**, se establece todo lo relacionado a la subasta formal. El Artículo 6(e)(2) dispone que la adjudicación de subastas se hará al postor más bajo tomando en consideración, entre otros factores, las especificaciones sometidas y las experiencias obtenidas con los licitadores en contratos anteriores. No obstante, el Artículo 6(e)(3) dispone que la **Junta de Subastas del CRIM** puede rechazar la oferta más baja en precio cuando existe evidencia de que el licitador no ha dado cumplimiento satisfactorio a contratos otorgador anteriormente.

-**III-**

En resumen, **Unique** señala de la **Junta Revisora de Subastas-ASG** incidió al no determinar que fue la única licitadora que cumplió con el requisito de un único precio y que fue el mejor postor, por lo que su descalificación carecía de fundamento jurídico. Finalmente, aduce que **Bridge** incumplió con las especificaciones del pliego de subasta. No tiene razón. Por estar íntimamente relacionados, discutiremos conjuntamente los errores señalados.

Surge del expediente que la oferta de **Unique** carecía de una certidumbre mínima necesaria para su evaluación en cuanto al precio único. La **Recurrente** presentó una tarifa "sin aumento al salario mínimo" y ello implicaba la existencia de un ajuste futuro no especificado que dejaba indeterminado el precio final. Nótese, que los demás licitadores presentaron ofertas con un precio base claro y el ajuste vinculado a la modificación legislativa del salario mínimo. Por lo que dichos ajustes eran contingencias legales y no precios alternos, según prohibidos en el pliego.

Si bien cierto que, **Unique** presentó la oferta más económica, la **Junta de Subastas del CRIM** no tenía la obligación de limitar su evaluación a un análisis económico, ignorando factores de cumplimiento y confiabilidad. Factores que el **Reglamento Núm. 8342**, *supra,* incorpora como criterios esenciales de adjudicación.

La descalificación de **Unique**, estuvo basada en los documentos presentados que describían —de forma concreta— fallas que afectaron la ejecución del contrato para el año fiscal anterior a la subasta. Conforme a las disposiciones del **Reglamento Núm. 8342**, la **Recurrida** ponderó adecuadamente la experiencia previa de la **Recurrente** y su incapacidad de cumplir con el contrato. Nótese, además, que **Unique** no desconocía de las alegaciones en su contra, ya que esta parte fue la que produjo en reconsideración los documentos que evidenciaban la insatisfacción del **CRIM** con su ejecutoria.

Es decir, la determinación de la **Junta de Subastas del CRIM** no fue contraria al interés público y la descalificación de **Unique** no se basó en conjeturas, sino en documentos concretos, comunicaciones oficiales, evaluaciones internas y la estructura tarifaria de los licitadores.

Por último, la **Junta de Subastas-ASG** no erró al no descalificar a **Bridge** por incumplir con ciertas especificaciones de la subasta. El expediente ante nuestra consideración no apoya las alegaciones levantadas por **Unique**. Esto es, no surge del récord que la determinación de la **Junta de Subastas del CRIM** fue arbitraria o abusiva. De hecho, del expediente surge con meridiana claridad cómo ocurrió el proceso decisional ante la **Junta de Subastas del CRIM**. A nuestro juicio, la **Recurrida** analizó cada oferta al palio de las leyes y reglamentación aplicables. Por lo tanto, determinamos que la adjudicación de la Subasta Núm. 2024-002 a **Bridge** es razonable y está sostenida por la evidencia que obra en el expediente.

### -IV-

Por todo lo anteriormente consignado, resolvemos **confirmar** la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones